IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| RANDOLPH WAYNE PARKER, Jr. ) | |
| ) | |
| Plaintiff , ) | |
| ) | |
| v. ) | Case No. 7:12-cv-03503-RDP-RRA |
| ) | |
| KIM THOMAS, *et al.,* ) | |
| ) | |
| Defendants. ) | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Randolph Wayne Parker, hereinafter referred to as the plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at the Bibb Correctional Facility in Brent, Alabama.  Named as defendants in the complaint are ADOC Commissioner Kim Thomas; Warden Willie Thomas; Correctional Captain John Hutton; Correctional Lieutenant Thomas Butler; Correctional Sergeant Ann Marie Fulgham; and Correctional Officer Neicko White.  The plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Thus, under § 1915A, the court may *sua sponte* dismiss a prisoner's complaint prior to service. Nevertheless, in order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

PLAINTIFF'S FACTUAL ALLEGATIONS

The plaintiff is an inmate at the Bibb Correctional Facility in Brent, Alabama. He alleges that on the evening of September 10, 2012, Officer Neicko White became angry after a verbal confrontation with an inmate in the kitchen area and prematurely terminated the evening meal, causing several disgruntled inmates to voice their displeasure. When White began to strike one of the inmates with his hands and a baton, other inmates became angry and a "small riot" broke out in the C-dorm section of the facility. During these events, inmates moved several beds, including the plaintiff's, in front of the entrance ways and exits of the C-dorm area. In an effort to quell the disturbance, Captain Hutton told all inmates to "catch a rack," at which point the plaintiff climbed onto a bed with another inmate. The

plaintiff states that while he laid on his stomach with his hands on his head he was "slapped, struck, and maced" by defendants White, Butler, and Fulgham, despite the fact that "[his] body language never posed a [threat] towards the officers or anyone else."[1]

The plaintiff alleges that he suffered back and eye injuries as a result of these events, and vaguely states that he received some sort of "medical treatment" that evening by a prison nurse. He was informed by the nurse that in order to receive further treatment he would need to "drop a sick call," which he claims to have done twice without a response. Five days later on September 15, 2012, he informed Lieutenant Butler during the lunchtime meal that he "needed medical attention for the injuries [he] sustained," but was told by Butler to "get the fuck out of my face." After turning in another sick call request, the plaintiff states that he received additional "medical attention" of an unspecified nature on September 27, 2012, at which time he was prescribed Tylenol for back pain. He complains that as of the date he signed the complaint, September 30, 2012, he had not received the Tylenol as prescribed.

On September 15, 2012, the plaintiff received a disciplinary charge instituted by Lieutenant Butler, charging him with failure to obey a direct order from an ADOC official during the events of September 10, 2012. On September 24, 2012, a disciplinary hearing was held in which the plaintiff was found guilty of the charge, and on September 26, 2012, Warden Thomas "approved" the disciplinary measures. The plaintiff now contends that

---

[1] Specifically, he states that White used a baton and mace, Butler used his fist, and Fulgham used her hands and mace. (Doc. #1, p. 6).

Lieutenant Butler's disciplinary charge was in retaliation for his having complained of the need for additional medical care and for seeking access to the law library.[2]

## DISCUSSION

**Excessive force:**

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). However, maintaining institutional security and preserving internal order and discipline are essential goals of a prison administration and may require limitation or retraction of the constitutional rights of prisoners. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 47 (1979). Prison officials must therefore be free to take appropriate action to insure the safety of inmates and staff and the courts will not normally second-guess prison officials on matters involving internal security. *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998). When disciplinary action is taken by a prison official to prevent a security threat or to restore official control, the court's Eighth Amendment inquiry focuses on whether force was applied in a good faith effort to maintain or restore discipline or was undertaken maliciously or sadistically to cause harm. *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994). The factors to be examined in determining whether

---

[2] The plaintiff alleges that inmates of the "C" and "D" dorms were denied access to the law library between the dates of September 16, 2012, and September 30, 2012, despite multiple requests to Warden Thomas and Captain Hutton. However, missing from the plaintiff's complaint is any allegation that he personally suffered actual prejudice to an ongoing legal action as a result of being denied access to the library.

the use of force was wanton and unnecessary include an evaluation of: 1) the need for the application of the force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived by the responsible officials and 4) any efforts made to temper the severity of the response. *Hudson v. McMillian*, 503 U.S.1, 7 (1992).

In the present case, although the facts pled by the plaintiff are limited, they are sufficient to require a further response from defendants White, Butler, and Fulgham. The plaintiff admits that there was a disturbance in the cellblock at the time, and it seems likely that the use of force was appropriate with respect to certain of the inmates. However, the plaintiff has also alleged facts which show that he personally posed no threat to the officers and that there was little or no need for the use of force specifically against him on that occasion.

With respect to convicted prisoners, the actions alleged to have been taken by these defendants violate the Constitution if they were unnecessary and wanton or were done maliciously or sadistically to cause harm. *Whitley, supra*. Based upon the facts presently before the court, it appears the defendants' actions went beyond a good faith effort to restore discipline. Therefore, absent a response from the defendants, the court is not prepared to say as a matter of law that the defendants acted within the permissible bounds of the Eighth Amendment, even when viewed in the context of a prison setting where the need for security, order and discipline are paramount. Accordingly, the allegations in the complaint, deemed as true for purposes of this review, are sufficient to initially state a claim under § 1983. As discussed above, when force is used in a good faith effort to maintain or restore discipline,

the Constitution is not necessarily violated. However, in this case, the plaintiff has pled facts suggesting that the use of force was neither necessary nor in good faith.

**Medical claim:**

Although the plaintiff complains in vague terms of a denial of medical care, he names no members of the prison medical staff as defendants. The only reference to a named defendant with respect to medical care is the plaintiff's September 15, 2012, encounter with Lieutenant Butler, in which Butler responds rudely to the plaintiff's statement that he needs further medical attention for his back. Although it can be a violation of the Eighth Amendment if prison guards delay or deny access to medical care, there is nothing in the complaint which shows that the plaintiff was prevented by Butler from approaching medical personnel about his problem. Without more, the plaintiff simply has not alleged that Butler intentionally delayed, interfered with, or denied medical care for a serious medical need.

With respect to the plaintiff's generalized complaints about medical care, it is important to note that medical treatment of prisoners violates the Eighth Amendment only when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97 (1976). Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Id.* at 106; *McElligot v. Foley*, 182 F.3d 1248 (11th Cir. 1999). Likewise, a mere difference of opinion between

6

an inmate and the prison medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment. *Harris*, supra at 1505.

an inmate and the prison medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment. *Harris*, supra at 1505.

In the present case, it cannot be said that the plaintiff has pled facts sufficient to show that prison officials have been deliberately indifferent to a serious medical need. The plaintiff has alleged no facts which show that any prison staff member has engaged in acts or omissions which were so "grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, supra at 1505. In this instance, the plaintiff's chief complaint is that two of his medical request slips were ignored and that there had been some delay in receiving the pain medication that was eventually prescribed. However, he presents no facts to show specifically that he suffers from an objectively serious medical condition or injury, or that the alleged delay in receiving medical services has had a seriously adverse effect his health. More importantly, he has pled no facts to show that any of the prison staff acted with subjective intent to recklessly deny medical care for a serious injury or illness. *Estelle v. Gamble*, 429 U.S. at 104-05. *See also Mandel v. Doe*, 888 F.2d at 788. Without more, the plaintiff's complaint is simply not sufficient to assert an Eighth Amendment medical claim.

**Retaliation:**

It is well settled that "an act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987). However, it has been recognized that claims of retaliation are subject to abuse by prisoners. *Flaherty*

*v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).[3]  Therefore, the plaintiff must present facts which show that his exercise of a constitutionally protected right was a "motivating factor" behind a defendant's actions against him. *Mount Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

In light of the above guidelines, it is clear that the plaintiff has failed state a claim of retaliation against Lieutenant Butler.  It was incumbent upon the plaintiff to plead specific facts from which the court could, at a minimum, infer a retaliatory motive on the part of the defendant.  In that regard, the plaintiff's complaint "must contain enough facts to state a claim of retaliation by prison officials that is 'plausible on its face.'" *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).  In this case, the plaintiff has done nothing more than assert the conclusory allegation that Butler's disciplinary charge arising from the September 10, 2012 events was motivated by retaliation for his having made a remark to Butler about the need for further medical care and/or for seeking access to the prison law library.  However, apart from this unsupported conclusion, the plaintiff presents no specific facts which make a plausible showing that Butler was motivated by retaliatory animus when he filed the disciplinary charge.  Where, as here, the pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not shown - that the pleader entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-51 (2009) (internal quotations omitted).

---

[3] Claims of retaliation by prisoners should be reviewed with "skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Additionally, where a prisoner alleges that the retaliation was in the form of a disciplinary action, his claim is precluded if the discipline was imparted for an actual violation of prison rules. *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994); *Earnest v. Courtney*, 64 F.3d 365, 367 (8th Cir. 1995). To maintain otherwise would invite prisoners to openly flout prison rules on the heels of having filed a grievance or lawsuit, and then assert a § 1983 claim arguing that they were disciplined in retaliation for having exercised constitutional rights. *See Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir. 1990). The Eleventh Circuit has recently addressed this issue and has adopted the approach taken by the Eighth Circuit in the cases cited above. *See O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011). In *O'Bryant*, the Eleventh Circuit stated that "an inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process." *Id*. at 1215. The Court added an additional requirement that there must be "some evidence" to support the disciplinary hearing officer's findings of fact.[4] *Id*. at 1215. Therefore, as long as a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was some evidence to support the disciplinary findings, a

---

[4] However, with respect to this evidence requirement, it seems clear that it is not appropriate for the court to "retry" the disciplinary charges or second guess the findings of the prison administration. To do so "would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction *after* having filed a grievance." *O'Bryant,* 637 F.3d at 1216.

prisoner cannot later state a claim of retaliation against the officer who reported the infraction.[5] *Id*. at 1215.

In this instance, the prison administrative records submitted by the plaintiff with his complaint show that the plaintiff was found guilty by a hearing officer after having been given written notice of the charges and being afforded the opportunity to present a written statement. (Doc. #1, pp. 18-20). The hearing officer issued written findings outlining the basis for his decision, and cited evidence in the form of sworn testimony in support his conclusions.[6] *Id*. Therefore, the finding of guilt by the hearing officer "essentially checkmates [the plaintiff's] retaliation claim" against Lieutenant Butler. *Henderson*, supra, at 469; *see also Crittendon v. Campbell*, 2007 WL 2853398, at *7 (M.D. Ala. Sept. 27, 2007); *O'Bryant v. Finch*, 2008 WL 691689, at *9 (N.D. Fla. March 12, 2008).

**Access to courts:**

The right of access to the courts as defined in *Bounds v. Smith*, 430 U.S. 817 (1977), requires only that inmates be provided with some reasonable means by which they may bring their legal claims before the court. However, in *Lewis v. Casey*, the Supreme Court made it

---

[5] The minimal procedural due process requirements are outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The holding in *Wolff* requires: (1) that the inmate be given written notice of the charges, (2) that the fact-finder issue a written statement outlining the evidence relied upon and the reasons for any disciplinary action and (3) that the inmate be allowed to call witnesses and present documentary evidence, provided it will not be unduly hazardous to institutional safety or correctional goals. 418 U.S. at 564-566.

[6] As discussed above, so long as there is some evidence to support the hearing officer's findings, the *O'Bryant* decision makes it clear that this court is not to second guess those findings. The Court stated that "[w]hether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel." *O'Bryant*, 637 F.3d at 1215.

clear that in order to prevail on a claim that his right of access to the courts has been violated, an inmate must establish prejudice by "demonstrat[ing] that the alleged shortcoming in the library or legal assistance program [or other alternative provided] hindered his efforts to pursue a legal claim." 518 U.S. at 350.  The court in *Bounds* "did not did not create an abstract, freestanding right to a law library or legal assistance" and "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351.  Therefore, in order to prevail on a claim under *Bounds*, the plaintiff must show actual injury.  In other words, he must show that prison officials actually impeded his pursuit of a non-frivolous post conviction claim or civil rights action. *Wilson v. Blankenship*, supra.  In that regard, the plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials.  The mere allegation of denial of access to a law library is inadequate.  *Sabors v. Delano*, 100 F. 3d 82, 84 (8th Cir. 1996).

   In the present case, the plaintiff's general allegations do not meet this burden. Although he complains that he and certain other prisoners were denied access to the prison law library for a period of time in September 2012, he does not allege facts which demonstrate any actual injury in the form of prejudicial harm or hindrance to an ongoing legal action. Having failed to do so, he does not assert a valid claim for denial of access to the courts.

## THE SUPERVISORY DEFENDANTS

The plaintiff names Commissioner Kim Thomas and Warden Willie Thomas as defendants, but has not alleged that they were personally involved in the incident about which he complains. To the extent he attempts to implicate them through the concept of *respondeat superior*, his complaint is without merit. "There is no *respondeat superior* liability under § 1983." *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995) (*citing Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978) and *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Florida Dept. of Labor and Employment Security*, 133 F.3d 797, 802 (11th Cir. 1998). Supervisory personnel may be held accountable for the constitutional violations of their subordinates upon proof that they (1) were directly involved in the wrongdoing; (2) failed to remedy a wrong after learning of it through report or appeal; (3) created or allowed a policy under which the violation occurred; or (4) were grossly negligent in managing the subordinates who caused the wrongdoing. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986). Absent some allegation that Commissioner Thomas or Warden Thomas are "affirmatively link[ed]" to the acts which form the basis of the claims going forward in this matter, the complaint against them is insufficient to state a cause of action under 42 U.S.C. § 1983.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that all claims in this action, except the excessive force claim against defendants White, Butler, and Fulgham, be **DISMISSED WITHOUT PREJUDICE** for failing to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1). It is further RECOMMENDED that the remaining excessive force claim against White, Butler, and Fulgham be referred to the undersigned for further proceedings.

Plaintiff may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. Objections not meeting this specificity requirement will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DATED this 6th day of February, 2013.

_/s/ Robert R. Armstrong_
Robert R. Armstrong, Jr.
United States Magistrate Judge